# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.    **JANA LEGAKO,** | ) | |
| | ) | |
|         **Plaintiff,** | ) | **CIV-18-** 142-W |
| v. | ) | |
| | ) | |
| 1.    **THE STATE OF OKLAHOMA** | ) | |
|      **ex rel., OKLAHOMA CITY** | ) | |
|      **COMMUNITY COLLEGE,** | ) | |
| 2.    **JERRY STEWARD, in his** | ) | |
|      **individual capacity as President** | ) | |
|      **of Oklahoma City Community** | ) | |
|      **College,** | ) | |
| 3.    **STEVEN BLOOMBERG, in his** | ) | |
|      **individual capacity as Executive** | ) | |
|      **Vice President of Oklahoma City** | ) | |
|      **Community College, and** | ) | |
| 4.    **JOHN BOYD, in his individual** | ) | |
|      **capacity as Chief Financial Officer** | ) | |
|      **of Oklahoma City Community** | ) | |
|      **College,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
|         **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT[1]

**COMES NOW** the Plaintiff, Jana Legako, and for Complaint against the Defendants herein alleges and states as follows:

## PARTIES

1.     Plaintiff, Jana Legako, is an adult female residing in Oklahoma County,

---

[1] Plaintiff currently has a Charge of Discrimination pending with the Equal Employment Opportunity Commission filed against Defendant State of Oklahoma ex rel. Oklahoma City Community College. Plaintiff anticipates filing an Amended Complaint once her claims pending at the EEOC have been fully exhausted.

-1-

Oklahoma.

2. The Defendants are:

    a. The State of Oklahoma ex rel., Oklahoma City Community College ("OCCC"), a governmental entity doing business in Oklahoma County, Oklahoma;

    b. Jerry Steward, individually, in his capacity as President of OCCC;

    c. Steven Bloomberg, individually, in his capacity as Executive Vice President of OCCC; and

    d. John Boyd, individually, in his capacity as Chief Financial Officer of OCCC.

## JURISDICTION AND VENUE

3. This action arises out of Plaintiff's former employment with OCCC. Plaintiff asserts causes of action based on: (a) violations of Plaintiff's rights under the Family Medical Leave Act ("FMLA"); (b) violations of Plaintiff's rights under the First Amendment to the United States Constitution; (c) violations of Section 504 of the Rehabilitation Act in the nature of retaliation for Plaintiff's participation in opposing unlawful discrimination in the workplace; (d) violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution; (e) violations of state law which prohibits retaliation against an employee for engaging in whistleblowing activities (i.e., performing an important public obligation, exercising a legal right or interest, exposing some wrongdoing by the employer, or performing an act that public policy would encourage); (f) violations of Okla. Stat. tit. 74

§840-2.5; (g) tortious interference with a contract; (h) tortious interference with a prospective economic business advantage; and (i) breach of contract.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma, and the Defendants may be served in Oklahoma County, Oklahoma. Oklahoma County is located within the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. To the extent required, Plaintiff timely filed a Notice of Governmental Tort Claim on or about August 16, 2017, which was denied on or about September 13, 2017. This case is timely filed within the requisite period thereafter.

## STATEMENT OF FACTS

7. Plaintiff began her employment with OCCC on or about August 1, 2011. She was hired by then-Vice President for Human Resources Gary Lombard as the Director of Equal Opportunity. She held this title until in or around June 2012, at which time she was given the title and job duties of Director of Employment & Employee Relations.

8. Throughout her employment, Plaintiff was a satisfactory, or better, employee. She received positive performance evaluations and merit pay increases. At no time did she

receive any discipline.

9. Despite her good work performance, Defendant Steven Bloomberg, Executive Vice President of OCCC, told Plaintiff on or about February 22, 2017, that her employment contract for the 2017-2018 academic year would not be renewed; i.e., that her employment was being terminated.

10. Bloomberg told Plaintiff the reason was that Plaintiff allegedly "consistently violated" Defendant OCCC policy by creating and sustaining a toxic work environment in Human Resources. However, this was the first Plaintiff heard of such allegations.

11. Bloomberg further stated that he reached such conclusion following an alleged four (4) month investigation. However, this was the first time Plaintiff heard of any such investigation. And, Plaintiff was not interviewed as part of any alleged investigation, nor was she afforded any opportunity to respond to the alleged accusations lodged against her.

12. The claimed basis for not renewing Plaintiff's employment contract, i.e., terminating Plaintiff, was pretext.

13. Bloomberg had a history of targeting women over age 40, many of whom had used medical leave, for termination. During his tenure, Bloomberg terminated at least five (5) women for various alleged policy violations. However, he did not enforce policy violations by male employees.

14. By way of example, in or around July 2013, Plaintiff investigated a complaint that the Director of the Professional Development Institute, John VanHook, made racially

offensive comments. The complaint was substantiated. Yet, VanHook was not terminated. Instead, he received diversity training.

15. Following diversity training, additional complaints were lodged against VanHook. Yet, again VanHook was not terminated. He was demoted in or around June 2014 to an account executive position. He then voluntarily resigned. However, he was later hired back through a temporary staffing agency.

16. Further, in or around November 2015, Plaintiff discovered a memo regarding a reduction in force ("RIF"), listing employees eligible for retirement. The memo was prepared by Vice President of Human Resources Angie Christopher and sent to Defendants Steward, Boyd and Bloomberg.

17. Based on the memo and discussions Plaintiff had with Vice Presidents who were tasked with selecting positions for the RIF, Plaintiff became concerned that older workers, particularly those who used medical leave, were being targeted for the RIF.

18. In or around December 2015 and January 2016, after learning Steward intended to eliminate Defendant's policy on how employees were selected for the RIF, as well as names of employees being submitted for the RIF, Plaintiff told Steward, Christopher and Bloomberg that she opposed the manner in which employees were selected. Plaintiff believed eliminating the policy would open the door for supervisors to consider protected classes (such as age and/or disability) in lay-off selection.

19. Plaintiff submitted a written complaint to Christopher, Bloomberg and EEO

Director Regina Switzer on or about February 26, 2016.  Therein, Plaintiff stated that she believed violations of the ADA, ADEA, and FMLA would occur if individuals identified in the November 2015 memo, and mentioned in subsequent conversations with Plaintiff, were laid off.

20. After Plaintiff opposed the manner in which employees were selected for the RIF, the attitudes toward her distinctly changed.  She was no longer asked to participate in investigations of any kind, including EEO investigations, which she had customarily participated in as an investigator or reviewer.

21. Further, while her expertise had previously been sought by President's cabinet members, Vice Presidents, Directors and employees throughout her employment, contacts to Plaintiff drastically decreased after her complaints.  Moreover, Plaintiff discovered that her intra-office mail was being monitored and opened by others, including mail marked confidential.  And, Christopher attempted to remove two of four of Plaintiff's direct reports.

22. On or about September 13, 2016, Plaintiff was required to take FMLA leave to care for her ailing father.

23. Plaintiff had been scheduled to represent OCCC in an unemployment hearing that day (i.e., on September 13, 2016).  However, in light of her impending absence, Plaintiff made arrangements for Christopher to handle the hearing.  And, Plaintiff prepared the witnesses to be called during the hearing in the days preceding her leave.

24. The day after the hearing (i.e., on or about September 14, 2016), Christopher

told Plaintiff that Boyd, who had sat in on the witness preparation and subsequent hearing, said Plaintiff had not adequately prepared OCCC's witnesses for the hearing.

25. According to Christopher, one of the witnesses (whom Plaintiff had prepared) testified during the hearing that the terminated employee was under surveillance and being followed by OCCC's campus police. Plaintiff told Christopher that she had adequately prepared the witnesses, that the only way to have avoided the witness's truthful testimony would have been to instruct him to lie, which she would not do.

26. Thereafter, Bloomberg told Plaintiff to provide a written summary of how she prepared witnesses for the unemployment hearing. Plaintiff was told that this was in response to a complaint raised by Boyd.

27. As directed, Plaintiff submitted her written summary on or about September 21, 2016. Therein, Plaintiff outlined how she prepared the witnesses for the hearing, but also complained of the chilling effect that Boyd's allegations had on her use of FMLA.

28. Plaintiff was informed that on or about October 9, 2016, an investigation into her FMLA interference complaint was conducted. However, Switzer issued a Notification of Determination on or about February 3, 2017, finding there was no evidence of FMLA interference. And, less than three (3) weeks later, Plaintiff was notified that her contract for the 2017-2018 academic year was not being renewed, i.e., that she was being terminated.

29. Upon information and belief, Defendants Steward, Bloomberg and Boyd participated in the non-renewal (i.e., termination) decision.

30. And, Boyd had a history of targeting employees who took FMLA. During meetings between he and Plaintiff, Boyd commented on more than one occasion that he needed employees (who took FMLA) to be present at work. Moreover, he directed that employees that fell within his chain of command be written up after they began taking FMLA, despite the fact that they had little discipline, if any, prior to taking leave.

31. Plaintiff was accused of creating a toxic work environment, but was given no information regarding any complaints about her behavior, nor was she permitted to view the accusations to defend herself. In contrast, male employees who have been accused of violating policy were permitted to review complaints made against them and materials gathered through the course of the investigation and respond.

32. Bloomberg initially agreed to provide Plaintiff with materials relating to the accusations supposedly lodged against her to allow her to grieve the non-renewal decision. However, Plaintiff never received such materials.

33. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I: FMLA Interference and Retaliation

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

34. This count is brought against all Defendants.

35. The matters alleged above constitute interference with and retaliation for

Plaintiff's use or attempted use of medical leave in violation of the FMLA and corresponding state law.

36. Plaintiff was entitled to medical leave because she worked for Defendant OCCC, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1250 hours within the one year prior to her need for leave.

37. Plaintiff was required to take leave to care for her parents who suffered from serious health conditions.

38. Defendants OCCC and Boyd interfered with Plaintiff's rights under the FMLA by engaging in conduct which had a chilling effect on Plaintiff's use of FMLA, thereby interfering with Plaintiff's rights under the FMLA.

39. Defendants also retaliated against Plaintiff for her use of FMLA by refusing to renew Plaintiff's employment contract, i.e., terminating her employment. Defendants' actions were taken in response to Plaintiff's exercise of rights under the FMLA.

40. As the direct and proximate result of Defendants' willful conduct, Plaintiff has suffered injuries and is entitled to recovery of all damages or other relief allowed by the FMLA, including but not limited to, lost wages (past and future), liquidated damages, attorney's fees and costs.

## COUNT II:  First Amendment Freedom of Speech

For her second cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

41. This Count is brought against the individually-named Defendants in their individual capacities.

42. The individually-named Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to freedom of speech as protected by federal law.

43. The matters alleged above were in violation of Plaintiff's First Amendment right to freedom of speech which was clearly established at the time of the actions in question. Plaintiff's comments as stated herein constitute comments on a matter of public concern. Defendants' actions were in deliberate indifference to the constitutional rights of Plaintiff. Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

44. The matters alleged above represent a violation of Plaintiff's rights under the First Amendment, *inter alia*, which has caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

45. To the extent that the actions of any individual are deemed willful or deliberately indifferent, then punitive damages are available and should be assessed against each such person.

## COUNT III: Rehabilitation Act

For her third cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

46. This count is brought against Defendant OCCC.

47. The matters alleged above constitute violations of Section 504 of the Rehabilitation Act in the nature of retaliation for Plaintiff's participation in opposing unlawful discrimination in the workplace.

48. Plaintiff is entitled to relief under Section 504 of the Rehabilitation Act for retaliation because she engaged in protected activity, she suffered adverse actions subsequent to the protected activity, and a causal link exists between the protected activity and adverse actions.

49. As a direct and proximate result of Defendant OCCC's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

50. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by law.

### COUNT IV: Fourteenth Amendment Procedural Due Process

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

51. This Count is brought against the individually-named Defendants in their individual capacities.

52. The individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to procedural due process.

53. The matters alleged above were in violation of Plaintiff's Fourteenth Amendment right to procedural due process which was clearly established at the time of the actions in question. The actions of the Defendants were in deliberate indifference to the constitutional rights of the Plaintiff. Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

54. The matters alleged above represent a violation of Plaintiff's rights under the Fourteenth Amendment, *inter alia*, which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

55. To the extent that the actions of any individual are deemed willful or deliberately indifferent, then punitive damages are available and should be assessed against each such person.

### **COUNT V: *Burk* Tort**

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

56. This Count is brought against Defendant OCCC.

57. The acts described above constitute a violation of Oklahoma's public policy, which prohibits wrongful termination and retaliation against whistle-blowers for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would

encourage or, for refusing to do something that public policy would condemn.

58. More particularly, Plaintiff was wrongfully discharged from her employment in retaliation for having complained that employment decisions were being made based on age, disability and other protected classes in violation of clear public policy articulated in Okla. Stat. tit. 25 §§ 1302 and 1402 (prohibiting discrimination in state government goods, services and employment) and Article 2, Section 22 of the Oklahoma Constitution. Plaintiff was also wrongfully discharged in retaliation for having refusing to engage in illegal activity, i.e., instructing witnesses to commit perjury in violation of Okla. Stat. tit. 21 §504.

59. Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future), emotional distress damages, costs and attorney fees.

**COUNT VI:  Violation of Whistleblowing Act (Okla. Stat. tit. 74 § 840-2.5)**

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

60. This Count is brought against Defendant OCCC.

61. The acts described above constitute a violation of Oklahoma's Whistleblowing Act, which prohibits disciplinary action being taken against state employees for reporting violations of federal and/or state law.

62. Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future),

emotional distress damages, costs and attorney fees.

### COUNT VII: Tortious Interference

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

63. This Count goes against the individual Defendants.

64. The acts above-described constitute unlawful tortious interference with a contractual/employment relationship. Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendant OCCC. Defendants had no justification, excuse, or privilege for such interference.

65. As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT VIII:  Interference with Prospective Economic Advantage

For her eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

66. This count goes against the individual Defendants.

67. The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

68. Plaintiff had a reasonable expectation for profit in her employment with Defendant OCCC.

69. Defendants had knowledge of this relationship and/or expectancy.

70. Defendants intentionally induced or caused a breach Plaintiff's expectancy.

71. Such breach resulted in damage to Plaintiff.

72. As a result, Plaintiff is entitled to all damages allowed by state law.

## COUNT IX: Breach of Contract

For her ninth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

73. This Count is brought against Defendant OCCC.

74. Plaintiff and Defendant OCCC entered into an employment contract.

75. Pursuant to the explicit terms of the contract, Defendant agreed to comply with all state and federal laws during the terms of the contract, which would include federal and state laws prohibiting unlawful discrimination and retaliation.

76. Defendant OCCC breached the contract by failing to comply with federal and state laws, including those prohibiting unlawful discrimination and retaliation, by refusing to renew Plaintiff's contract because of the unlawful grounds set forth herein.

77. Moreover, the contract entered between Plaintiff and Defendant OCCC contained the implied covenant that each party would act in utmost good faith and deal fairly with the other performing the contract.

78. Defendant OCCC breached the contract by failing and refusing to deal with Plaintiff fairly and in good faith, breaching the express terms of the agreement.

79. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages.

80. As a result, Plaintiff is entitled to all damages allowed by state law.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff requests this Court enter judgment in favor of Plaintiff and against the Defendants and assess compensatory damages including but not limited to backpay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

**RESPECTFULLY SUBMITTED THIS 13th DAY OF FEBRUARY, 2018.**

s/ Jana B. Leonard
**LEONARD & ASSOCIATES, P.L.L.C.**
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA #22641**
**SHANNON HAUPT, OBA #18922**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800        TELEPHONE**
**(405) 239-3801        FACSIMILE**
**leonardjb@leonardlaw.net**
**johnstonlw@leonardlaw.net**
**haupts@leonardlaw.net**

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED